Pearson, C. J.
 

 The pleadings are very voluminous, but not more so than the complicated nature of the case and the large amount involved called for. Indeed the bill and answers are drawn Avith much care and professional skill, and no doubt fairly present the grounds on Avhich the claims of the parties must ultimately be decided.
 

 As is said in
 
 Parker v. Grammer, ante,
 
 p. 28, “ at this stage of the proceeding there is nothing before the court but the bill, answer and exhibits; and, treating the bill as an affidavit in support of the complainants allegations, the court upon that, in connexion with the answer and exhibits, is, taking the whole matter together, to decide the question of probable cause in regard to the primary equity, and the question of a reasonable apprehension as to the security of the fund.”
 

 1. We are satisfied that the complainant does not sue in a mere spirit of litigation, and seek to set up an unfounded claim, but has “probable cause,” aud may at the hearing be able to establish his primary equity. In January, 1861, the complainant, being a man of large means and extended-credit, and engaged at the city of Wilmington in the distilling of turpentine on a large scale, and in an extensive general commission business, took into copartnership Avith him Cyrus Yan Amringe, a yroung man without capital, but of much intelligence and experience in that particular line of business, and in all respects an active business man. By the articles of copartnership, among other things, it Avas stipulated that Cyrus Avas to devote himself exclusively to the business of the firm. Upon the breaking out of the, Avar the complainant, who was a Northern man by birth, went to the North, and transferred thither a large part of the partnership effects, and being deterred from returning to
 
 *136
 
 Wilmington on account of the state of feeling there, and in order to evade the confiscation laws of the government of' the Confederate States, he conveyed the legal titles of all of the property and assets of the firm, and also of his individual property situate in Wilmington," to Cyrus Van Amringe, his junior partner, in the confidence that he would hold if for him and dispose of it according to his directions. As-the distilling and commission business could not be carried on successfully during the war, Cyrus, with the consent of the complainant, his senior partner, branched off eventually into the business of making salt, rosin oil, soap, lamp-black, &c., which he was enabled to do by the means and credit of the firm, using for these last purposes a large quantity of rosin belonging to the firm. Cyrus was very successful in his operations, and, among other things, made investments; in real estate, taking the title in his own name to prevent confiscation. In 1862 Cyrus died, leaving the defendants George Van Amringe and Heart his executors. George,, who was the brother of Cyrus, and who had but little or no means prior to the war, under a general power of attorney from the complainant, as executor of Cyrus, took the place-of his deceased brother, and undertook to work out his contract, by which, according to the articles of copartnership), he was to become entitled to one-half of the partnership-property and effects, and to one-half of the “ realized nett, profits.” George was also very successful in his operations, and made large investments in real estate and other property, among other things, in a large quantity of spirits of turpentine, &c., in Sumpter, S. C., which, to avoid paraphrase, is called the “ Sumpter stuff,” some $20,000 in value,, taking the title for all of this property in his own name,, changing the name of the firm to that of
 
 Van Amringe
 
 efe
 
 Co.?.
 
 and taking receipts for debts of the firm of Blossom & Co.,, paid off by him out of the assets of the firm, in the name of himself, as executor of Cyrus.
 

 
 *137
 
 In 1866 the complainant returned to Wilmington, took 'into possession such of the effects of the firm as had escaped the ravages of war, called upon George for a transfer of the legal title of the original property of the firm, of that ac•quired by Cyrus and of that acquired by George; and proposed a basis upon which they should go into an account •and general settlement. This was not acceded to by George, who in turn proposed a basis of settlement, by which all of the operations of Cyrus and himself, including the “Sumpter •stuff,” were to be brought into the account on the footing of •an equal division of the property and of the profits made •after June, 1861, provided the complainant, would bring into the account his operations with the effects of the firm while at the North and in Europe. This was nor acceded to. Af■terwards the complainant makes sale of the “Sumpter stuff,” and is forced to “ heave to ” by a “ shot ahead ” in the shape of an action of trover, whereupon he files this bill for an account and a declaration of trust, and in the meantime for an injunction. It is manifest, from this general view, that a resort to a Court of Equity in order to have an account taken, and the rights of the parties declared, wras eminently ■proper, and that the complainant has probable cause in support of his primary equity.
 

 2. In support of the second branch of the proposition, “ a reasonable apprehension as to the security of the fund,” the •complainant does not put his case upon an allegation of the ■insolvency of the defendant George Yan Amringe, but he •alleges that the defendant George having the legal title as the executor of Cyrus, and in his own right, asserts an absolute ownership, and a right to dispose of it as he pleases, in respect to all of the property acquired by Cyrus and himself; that he assumes the right to withdraw from the firm •large amounts without the concurrence of the complainant, who is the surviving partner; and has actually appropriated -very considerable sums to the support of himself and his
 
 *138
 
 father and mother and a younger brother, under the pretext of paying off legacies given by the will of Cyrus; that he-has taken receipts for debts of the firm, paid out of the assets of the firm, in his name as executor for Cyrus, and made entries to that effect on the books; and changed the name-of the firm, with a view to complicate and embarrass the accounts; and that he has taken the books and papers in reference to the transactions of Cyrus and himself, from the office of Blossom & Co., and assumes the entire control over them. These allegations do not rest alone on the bill read as an affidavit, and the answer of Heart, which was also read as an affidavit; but receives such confirmation from the admissions in the answer of George Van Amringe, as to satisfy us that the complainant had ground for a reasonable apprehension as to the security of the fund.
 

 It was urged by the counsel of the defendant that under the maxim in equity, a man must come into equity with clean hands, (which is also a rule of law under the maxim, “
 
 Ex turpi causa actio non oritur,")
 
 this bill cannot be entertained, as it sets out on its face, as the ground of the equity of the complainant, that he transferred the legal title to* Cyrus Van Amringe
 
 in fraud and deceit,
 
 with a view to evade the confiscation acts of the government of the Confederate States. For this position he cited cases by which it is settled that one, who makes an absolute deed with intent to* defraud creditors, can have no relief in a court of equity. "We do not concur in this view of the subject. The objection would no doubt have been fatal, if taken before a court of the
 
 defacto
 
 State government, while it formed a part of the Confederate States; but this court is a co-ordinate branch of a rightful State government, forming a part of the United States, and cannot entertain such an objection. For, in our view, the complainant did but “ fight fire with fire;” that is, he resorted to artifice and deceit,
 
 ex necesítate,
 
 to avoid loss by reason of the acts of a public enemy of the-
 
 *139
 
 nation. He is justified, or rather is not to be blamed, on the ground that artifice, deceit and stratagem may, during wdr, be resorted to to deceive the enemy. For these reasons we concur in the opinion of his Honor, that the injuction ought to be continued until the hearing.
 

 It is apparent that the rights of the parties in respect to the “Sumpter stuff” must necessarily be involved in the general account, and cannot be declared until the account is taken; and in the absence of any suggestion of the insecurity of this fund, by reason of a want of responsibility on the part of the complainant, we can see no reason for isolating that matter, and allowing the defendant George, who, in one aspect of the case holds the legal title simply as trustee, to proceed in his action, and recover the value of the property as damages, inasmuch as the value of the property must be brought into the account, so as to present the question of the equitable rights of the parties upon exceptions. We think, however, that the decretal order should be so modified as to allow the defendant George to take possession of and use such of the real property as was not in the possession and use of the complainant at the time the bill was filed, or which is not now in his possession and use; subject to an account by the said George of the rents and profits oí the land, which he so takes possession of and uses. The cost of this appeal will abide the final decision in the cause.
 

 This will be certified.
 

 Per Curiam.
 

 Decree accordingly.